IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| FAWAD SHAH SYED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 117-036 |
| | ) | (Formerly CR 113-061) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Petitioner Fawad Shah Syed filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.      **BACKGROUND**

A.      **Pretrial Proceedings**

On March 6, 2013, the grand jury in the Southern District of Georgia charged Petitioner with one count of attempted online enticement of a minor, in violation of 18 U.S.C. § 2422(b), and two counts of destruction and alteration of records in a federal investigation, in violation of 18 U.S.C. § 1519. United States v. Syed, CR 113-061, doc. no. 19 (S.D. Ga. Mar. 6, 2013) (hereinafter "CR 113-061"). As to count one, the indictment alleged Petitioner used a facility of interstate and foreign commerce to knowingly attempt to persuade, induce, entice, and coerce an individual he believed to be a fourteen-year-old

female to engage in sexual activity for which he could  be charged with the criminal offenses of statutory rape and child molestation.  Id. at 1.  As to counts two and three, the indictment alleged Petitioner knowingly altered, destroyed, concealed, or covered up information on his cellular telephone and Sony Vaio laptop computer, respectively, with the intent to impede, obstruct, and influence the investigation of the crime charged in count one, a matter Petitioner knew or contemplated was within the jurisdiction of the Federal Bureau of Investigation ("FBI").  Id. at 1-2.  The charge of attempted online enticement of a minor carried a minimum term of imprisonment of ten years and a maximum term of imprisonment of life, and the destruction and alteration of records in a federal investigation charges carried a maximum term of twenty years imprisonment for each count.  CR 113-061, doc. no. 20. Petitioner retained M. Travis Saul to represent him as trial counsel.  Id., doc. no. 14.

After resolution of all pretrial motions and the grant of one trial continuance, Chief United States District Judge J. Randal Hall set the matter for a jury trial on September 3, 2013.  Id., doc. nos. 24, 28-31, 35, 37, 42.  Petitioner filed a sealed motion to dismiss the indictment based on alleged prosecutorial misconduct before the grand jury.  Id., doc. no. 58. On September 3, 2013, the Court denied Petitioner's motion.  Id., doc. no. 108, p. 7.

On August 28, 2013, the government filed a notice of intent to use evidence pursuant to Federal Rule of Evidence 404(b) regarding Petitioner's interactions with a 13-year-old female in June 2012 and Nicole Neumann, Petitioner's now ex-wife, whom Petitioner met online when she was a minor.  Id., doc. no. 55.  Petitioner argued the evidence is inadmissible character evidence, the probative value is substantially outweighed by undue prejudice, and Petitioner's interaction with his ex-wife while she was a minor took place over

ten years ago and is extrinsic evidence.  Id., doc. no. 60.  The Court allowed the government

to introduce evidence of both prior interactions at trial.  Id., doc. no. 108, pp. 182, 210.

On September 1, 2013, the government filed a motion for notice of intent to assert an

entrapment defense.  Id., doc. no. 62.  The Court granted the motion on September 3, 2013.

Id., doc. no. 64.  Petitioner did not assert an entrapment defense at trial.  Id., doc. no. 108.

On September 3, 2013, Petitioner made an oral motion in limine to exclude a

recording of a phone call Petitioner made to his wife from the Richmond County jail after

being arrested on the basis the undue prejudice substantially outweighed the probative value

and the call included a discussion concerning bond and an attorney.  Id. at 8-9.  The

government argued the evidence was admissible as a statement by a party-opponent, law

enforcement already read Petitioner his Miranda rights, and Petitioner was on notice the call

was being recorded.  Id. at 10-11.  The Court denied Petitioner's motion and allowed

evidence of the recording.  Id. at 182-83.

**B.** **Trial**

**1.** **Government's Case-In-Chief**

**a.** **Investigators Mark Dobbins and Brian Jones' Testimony**

The government presented the following evidence.  Mark Dobbins is an investigator

with the Richmond County Sheriff's Department and works with the Federal Bureau of

Investigation ("FBI") on cyber crimes and computer exploitation.  Id. at 33-35.  Inv. Dobbins

initiated an undercover online investigation by creating a fictional profile as an underage

female on the mobile-based chat platform Meet24.  Id. at 35-36.  The purpose of the

investigation and fictional profile is to proactively combat child exploitation by engaging in

communication with potential criminals.  Id. at 41-42.  The profile depicted a fictional

fourteen-year-old female named "Samantha" living in Evans and included a picture of what appeared to be an underage female. Id. at 39-40. Inv. Dobbins created the profile in January 2012. Id. at 38. Inv. Dobbins received messages from a broad range of people, including adult males. Id. at 41.

On February 8, 2013, an individual going by the name of Daniel, later identified as Petitioner, contacted Inv. Dobbins' fictional profile. Id. at 42, 67-69. Petitioner initiated contact and they communicated from February 8 through February 11, 2013. Id. at 42-43, 55. Soon after their first contact, Petitioner and "Samantha" began communicating through text messages on Google Voice instead of Meet24. Id. at 48. Inv. Dobbins also sent a voice message as "Samantha," created by a young woman who sounds like a minor, but Petitioner continued communicating with "Samantha." Id. at 52-53. On February 10, 2013, Petitioner also had a telephone conversation with "Samantha," portrayed by a Columbia County employee with a "very youthful voice." Id. at 55-57. Petitioner continued communications thereafter. Id. Inv. Dobbins used Petitioner's Google Voice number and IP addresses of Petitioner's login to identify him. Id. at 59-68. Inv. Dobbins found Petitioner on the RCSO local database. Id. at 68-69.

Petitioner and "Samantha" exchange over one thousand texts between February 8, 2013, and February 11, 2013. Id. at 316. Petitioner was forty-six at the time he began contacting "Samantha." Id. at 69-70. After initiating contact, Petitioner almost immediately began calling her "sweetness" or "sweetie." Id. at 42-43, 74-76. "Samantha" said she was a fourteen-year-old female, and Petitioner said he was a twenty-three-year-old male. Id. at 75. Petitioner asked if "Samantha" was single and she said she was. Id. at 76. Petitioner discussed the possibility of meeting and asked about her living arrangements. Id. at 77.

Petitioner told "Samantha" she "sound[s] way mature for [her] age . . . [o]therwise [he] wouldn't be talking to [her]." Id. at 82.  After their February 10th phone conversation, Petitioner said through a text message "Samantha" sounded older than fourteen. Id. at 100.

He warned her to keep her phone close by because he did not want her stepfather to know she was texting a "much older guy." Id. at 85. Petitioner said he was divorced and had no children. Id. at 86.  Petitioner also told her to not tell her friend about their conversation. Id. at 88.  When Petitioner found out "Samantha's" stepfather was an ex-Marine, Petitioner indicated he was still not sure about meeting her and said "don't be surprised if I end up changing my mind about going further with you . . . . Thinking about dating an ex-Marine's daughter is a scary thought." Id. at 89.  Petitioner asked "Samantha" what she thought about him wanting to meet her, asked about them meeting, and offered to leave work to do so. Id. at 87, 92.  Petitioner described himself as "White/Italian" and asked her to identify her best features. Id. at 93.  Petitioner asked her the last time she had a boyfriend, as well as how intimate she had been with her last boyfriend, and asked her to elaborate on her answer. Id. at 84, 95-97.  He also asked "how romantic" she was but said he "wasn't referring to anything sexual." Id. at 95-96.  Petitioner asked if she liked to drink and indicated he did not "mean OJ." Id. at 96.

On February 11, 2013, Petitioner asked when they could meet the next day, and said they would "hang out, talk, chill" because it was their first time meeting. Id. at 101. Petitioner decided they would meet at her apartment. Id.  Petitioner expressed concern about "Samantha's" friend and her mother seeing him. Id. at 102.  Petitioner told her he was glad she is smart because "[o]therwise, [he would] never take a chance like this." Id. at 103. Petitioner said he wanted to see if they had the "same chemistry in person" as on the phone.

Id. at 107.  However, Petitioner indicated if something would happen between them, it would "have to be way [down] the road" when she was older.  Id.

Although they previously planned on meeting on February 12, 2013, Petitioner spontaneously recommended on February 11, 2013, they meet that day instead.  Id. at 109. Petitioner said they "can drink if you feel like it" and said he wanted to "chill" with her.  Id. After "Samantha" agreed, Petitioner asked for her address and asked her to meet him outside to keep him from looking suspicious.  Id. at 112.

Columbia County Investigator Brian Jones, who was working with Inv. Dobbins, followed Petitioner from his home in Martinez, GA, on the evening of February 11, 2013. Id. at 162.  Petitioner drove to a Kroger near his house, went inside, returned to his vehicle, and drove to the address given to him by "Samantha."  Id. at 162-66.  Petitioner purchased a pint of Boddingtons beer, Mike's Lite Hard Lemonade, and Marlboro cigarettes at the Kroger.  Id. at 124.

Petitioner texted to indicate his arrival at her apartment.  Id. at 112.  Petitioner arrived with the beer and hard lemonade, a can of pepper spray, and three unopened condoms.  Id. at 113-14.  Inv. Dobbins indicated he had not been texting with anyone else with the "Samantha" profile and identified Petitioner as the person who arrived at the apartment.  Id. at 112-13.

Inv. Dobbins arrested Petitioner and took him to the Richmond County Sheriff's Office, explaining to Petitioner he was being charged with criminal attempted child molestation, as it is illegal for a man in his 40s to have sex with a fourteen year old.  Id. at 125.  Inv. Dobbins told Petitioner he was with the FBI Task Force.  Id.  Inv. Dobbins offered to call Petitioner's now ex-wife, Nicole Neumann, and Petitioner told Inv. Dobbins he did

not want him to tell her about the charges.  Id. at 126.  When Inv. Dobbins attempted to search Petitioner's iPhone, he discovered the phone had been restored to factory settings remotely.  Id. at 126-28.  Inv. Dobbins contacted Ms. Neumann, who admitted wiping the data from his iPhone and one of his Gmail accounts at Petitioner's behest during a recorded phone call Petitioner made from the booking area of the Richmond County Jail.  Id. at 129, 131-32.  Petitioner also directed her to wipe his computer, but she could not find the program to do so.  Id.  Ms. Neumann gave the computer to Inv. Dobbins the next day.  Id. at 129-30.

### b.    Ms. Neumann's Testimony

Ms. Neumann met Petitioner online when she was seventeen.  Id. at 185.  Ms. Neumann told Petitioner she was seventeen when they met.  Id. at 187.  Petitioner was thirty-five at the time but told her he was twenty-five.  Id. at 185.  Ms. Neumann only discovered his real age months later after they were engaged.  Id. at 186.  Petitioner told her initially his name was Daniel.  Id. at 186.  Ms. Neumann found out his real name the first time they met, about a week after they started chatting.  Id. at 186-87.  Ms. Neumann and Petitioner had sex the first time they met.  Id. at 204-05.

Ms. Neumann was hosting a birthday party for one of their sons the night Petitioner was arrested, and she was irritated because he had been spending a lot of time on his phone.  Id. at 187-88.  Petitioner indicated he may be leaving later, and she asked him to stay.  Id. at 188.  Petitioner left the house around 11:00 p.m.  Id. at 191.  Ms. Neumann received a call from Inv. Dobbins later that evening telling her Petitioner had been arrested and how she could contact him.  Id. at 191.  Petitioner called her soon thereafter and walked her through deleting his Gmail account, wiping his iPhone, and attempting to wipe his laptop computer.  Id. at 192-98.  Inv. Dobbins called Ms. Neumann thirty minutes later and asked her if

Petitioner had asked her to do anything.  Id. at 198.  Ms. Neumann told Inv. Dobbins she deleted the Gmail account and wiped the iPhone but was not able to wipe the laptop.  Id.  She gave Inv. Dobbins the computer the next day.  Id.

c.      **Joel Cancilla's Testimony**

Joel Cancilla, a computer forensic specialist for the Georgia Bureau of Investigation, examined Petitioner's computer and obtained deleted messages from Petitioner's iPhone.  Id. at 210-11, 214, 221-222.   Mr. Cancilla was able to determine Petitioner had a text conversation with a thirteen-year-old female between June and July of 2012.  Id. at 224-26. She told Petitioner she was thirteen, and Petitioner said he was twenty-two.  Id. at 231. Petitioner told her she sounded "so mature."  Id.  Petitioner said it was good she sounded so mature because, otherwise, he would not have contacted her if he knew she was thirteen.  Id. Petitioner asked her about her turn-ons, and she said "sexual ones, some aggressiveness, but not too much, and kissing, biting my neck," to which he responded "Cool, cool."  Id. at 242.

They discussed meeting and the thirteen-year-old mentioned meeting at a cemetery near her house but said she would need to get a ride there or walk with her friends.  Id. at 232-33.  Petitioner told her he could pick her up and said "with our age thing, I think the less people know, the better."  Id. at 234-44.  They eventually decided to meet at the cemetery previously discussed.  Id. at 234.  Petitioner called the thirteen-year-old "babe" and "my love."  Id. at 234-35.  After they did not meet at the cemetery, Petitioner told the thirteen-year-old, "please don't ever talk to me again," saying what she did "was not cool" and he "had to borrow [his] sister's van to see [her] for nothing."  Id. at 235-36.  The thirteen-year-old explained her mom told her to be home in thirty minutes when she left, it took her fifteen minutes to get to the meeting place, and she got in trouble for staying out so long.  Id. at 236.

8

Petitioner told the thirteen-year-old he thought she was "freaked out" for some other reason. Id. She asked him if "it's possible for this to ever happen," and Petitioner said "probably not." Id.

### d.   SA Brian Ozden's Testimony

FBI Special Agent Brian Ozden testified Petitioner's conduct toward "Samantha" was "grooming," which is behavior designed to befriend, establish emotional control, and lower inhibitions for the purpose of sexual assault or exploitation of a child. Id. at 252-53. SA Ozden testified grooming is necessary for a predator because direct sexual approach would alienate a minor. Id. at 268. SA Ozden testified Petitioner's conduct met the six grooming techniques: (1) targeting; (2) gaining access; (3) isolation; (4) need fulfillment; (5) desensitization; and (6) establishing control and setting up a meeting. Id. at 252-53. Petitioner's grooming behavior toward "Samantha" included: misrepresenting himself regarding his name, age, marital status, personal habits, and living arrangement. Id. at 253-61. SA Ozden testified Petitioner attempted to control "Samantha" by creating emotional attachment by complimenting her maturity. Id. at 262-64, 266-67. Furthermore, Petitioner's discussion of "Samantha's" intimacy with her last boyfriend was part of desensitizing her to sexual activity. Id. at 264. Petitioner attempted to isolate "Samantha" from her family by telling her not to discuss their conversation with her stepfather. Id. at 272-73. Petitioner also indicated he desired a sexual relationship by asking whether she was single, her past boyfriends, their level of intimacy, whether she would date an older man. Id. at 268-69, 273-76. SA Ozden testified Petitioner's messages "are textbook grooming technique which is designed to fulfill that sexual exploitation." Id. at 290.

### 2.     Motion for Judgment of Acquittal

At the close of the government's case-in-chief, Mr. Saul made a motion for judgment of acquittal as to count one based on insufficient evidence.  Id. at 296.  Mr. Saul argued none of the texts explicitly requested sexual activity with "Samantha" and only evidenced a desire for friendship.  Id. at 296-99.  Mr. Saul also argued Petitioner stated in the text messages they would only be able to engage in sexual activity when she was older.  Id. at 301-03.  The government argued the body of the texts as a whole indicated Petitioner's attempt to entice "Samantha," consistent with SA Ozden's discussion of grooming.  Id. at 299-301.  The Court denied Petitioner's motion, finding as a matter of law there was sufficient evidence, when viewed in the light most favorable to the government, for a rational trier of fact to find Petitioner knew "Samantha" was under the age of eighteen and attempted to entice "Samantha" to engage in sexual activity that would be a violation of Georgia state law.  Id. at 303-07.

### 3.     Petitioner's Case-In-Chief

Petitioner testified to the following facts at trial.  Petitioner was born in Pakistan and has lived in the United States almost thirty years.  Id. at 308.  Petitioner was working at Fort Gordon as a contractor when he was arrested and had not been arrested for inappropriate conduct with a minor previously.  Id. at 308-09.  Petitioner was married to Ms. Neumann at the time of his arrest, and they have two children.  Id.  They met when she was seventeen, but they did not have sex before she turned eighteen.  Id. at 310.  Petitioner told Ms. Neumann he was in his 20s when they met online but he was actually thirty-four.  Id. at 343. After he was arrested, Petitioner argued with Ms. Neumann, and she told him she wanted him to be convicted and would try to get him convicted.  Id. at 311.

Prior to his arrest, Petitioner would commonly go out to bars to meet people at night and went online to meet people because he encountered difficulties meeting people in the Augusta area.  Id. at 310, 312.  Petitioner has low self-esteem and is insecure, so he sought out teenagers because they are easier to meet and have a conversation.  Id.  Petitioner seeks attention, regardless of the age of the other person.  Id. at 326.  Petitioner initiated the text conversation with Inv. Dobbins and admitted at trial the content of the texts was accurately represented.  Id. at 311-313, 328-29.   Petitioner was "uncertain" about whether "Samantha" was actually fourteen and stated in messages she "cannot be 14" and "sound[ed] so much older."  Id. at 313-15.  However, Petitioner knew it was possible he was meeting a fourteen-year-old.  Id. at 326

Petitioner stated it is common for people to lie when attempting to meet others online. Id. at 316.  Petitioner could not identify any texts where he attempted to entice sexual activity or discussed having sex.  Id.  The purpose of the texts was only to get to know "Samantha" and see if there was "emotional, psychological" chemistry between them.  Id. at 316-17.

Although Investigator Dobbins proposed meeting at the apartment, Petitioner was willing to meet anywhere.  Id. at 317.  Petitioner only mentioned sex when saying he would not have sex with her until she was older.  Id. at 317-18.  Petitioner admitted he lied about his age and marital status but pointed out Inv. Dobbins lied about his identity as well.  Id. at 318-19.  Petitioner said it is common for people to lie about themselves online.  Id. at 319-20.

Petitioner engaged in affairs with other women he met online at the time the investigation occurred.  Id. at 320.  Petitioner only exchanged false information with these women.  Id.  Ordinarily, Petitioner would explicitly ask the other person if they were interested in sexual activity if he wanted to entice sexual intercourse from them.  Id. at 322.

11

Accordingly, Petitioner had condoms with him "over 90 percent of the time" because "you never know who you [may] run into." Id. at 321-22.  On the night of his arrest, he did not purchase the condoms he brought to the apartment but "grabbed them from a little hidden compartment [he] has in the garage." Id. at 322.

Petitioner admitted telling his wife to delete his email account and wipe his phone and computer.  Id. at 323.  However, Petitioner was not aware the matter was within the jurisdiction of the FBI because Inv. Dobbins did not identify himself as an FBI agent or say there was an ongoing FBI investigation.  Id. at 323-25.  The officers were all in plain clothes or Richmond County uniforms, and Petitioner was taken to the Richmond County Sheriff's Office and then the Richmond County jail.  Id.  Petitioner only found out later the investigation was federal.  Id. at 325.  However, Petitioner testified Inv. Dobbins told him he was a member of the FBI Task Force when they met at the Richmond County Sheriff's Office the night of his arrest after being shown a video of the interview but did not remember hearing that until he saw the video.  Id. at 355, 358.

Petitioner admitted texting a thirteen-year-old female, telling her she sounded mature, and scheduling a meeting at the cemetery.  Id. at 338-41.  Petitioner doubted she was thirteen before the meeting.  Id. at 342.  Petitioner said they did not meet because the female saw him at a distance and walked away.  Id.

### 4.   Verdict

The jury returned a guilty verdict forty-four minutes after starting its deliberation.  Id. at 419-21.

### C.     Sentencing

On January 7, 2014, prior to the sentencing hearing, Petitioner wrote a letter to the Court requesting appointed counsel because Mr. Saul had threatened him and failed to represent him diligently because Petitioner had not been able to pay him.  Id., doc. no. 79. On January 21, 2014, Mr. Saul filed a motion to withdraw as counsel of record for Petitioner. Id., doc. no. 83.  On January 21, 2014, immediately before the sentencing hearing, the Court held an *ex parte* hearing to address Petitioner's desire to terminate Mr. Saul's representation. Id., doc. no. 105.  During the *ex parte* hearing, Petitioner stated he wanted to proceed with sentencing with Mr. Saul as his counsel, and Mr. Saul represented Petitioner at the sentencing hearing.  Id. at 3.

The United States Probation Office prepared the Presentence Investigation Report (PSI), which provided for a Total Offense level of thirty-nine, a Criminal History Category of I, and a Guidelines imprisonment range of 262 to 327 months.  PSI ¶¶ 35, 41, 65.  The PSI set Petitioner's base offense level for count one at twenty-eight, pursuant to U.S.S.G. § 2G1.3, and Petitioner's base offense level for counts two and three at fourteen, pursuant to U.S.S.G. § 2J1.2(a).  PSI ¶¶ 18, 25.  Petitioner's offense level for count one increased to thirty-four after enhancements for: (1) misrepresenting his name, age, and status; (2) using a computer or interactive computer service during commission of the crime; and (3) obstruction of justice.  PSI ¶¶ 19, 20, 23.  Petitioner's offense level for counts two and three increased to twenty-eight after an enhancement based on obstructing an investigation of a criminal offense, pursuant to U.S.S.G. § 2J1.2(a).  PSI ¶ 26.  Because the adjusted offense level from count one resulted in the higher offense level, Petitioner's combined adjusted offense level was thirty-five.  PSI ¶ 32. However, the combined adjusted offense level

increased to thirty-nine after a five-point enhancement for engaging in a pattern of activity involving prohibited sexual conduct.  PSI ¶¶ 33, 35.

Petitioner objected to:  (1) the aliases listed in the PSI; (2) the two-point enhancement for use of a computer or interactive computer service under U.S.S.G. § 2G1.3; (3) the two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1; and (4) the five-point enhancement for engaging in a pattern of activity involving prohibited sexual conduct under U.S.S.G. § 4B1.5.  PSI Addendum ¶¶ 1-4.

As to objection one, Petitioner argued he never used three of the aliases listed:  Fawad Dhah Sayed, Syed Fawad Shah, or Fanad Shah Syed.  Id. at ¶ 1.  The Court overruled the objection, as it had no impact on Petitioner's offense level or sentencing.  CR 113-061, doc. no. 107, p. 4.  As to objection two, Petitioner argued his iPhone did not constitute a computer or interactive computer service.  PSI Addendum ¶ 2; CR 113-061, doc. no. 107, pp. 4-5.  The Court found an iPhone satisfies the relevant definition of a computer and overruled Petitioner's objection.  Id., doc. no. 107, pp. 6-7.

As to objection three, Petitioner argued the two-point enhancements in paragraphs twenty-three and twenty-six of the PSI for obstruction of justice were for the same conduct and thus constituted double-counting.  PSI Addendum ¶ 3; CR 113-061. doc. no. 107, p. 8.  The government argued: (1) the enhancement in paragraph twenty-six dealt with offense-specific characteristics while enhancement twenty-three did not; and (2) by operation of the sentencing calculation, only the paragraph twenty-three enhancement actually increased Petitioner's total offense level.  CR 113-061, doc. no. 107, pp. 8-9.  The Court found the enhancements were appropriately applied and overruled Petitioner's objection.  Id. at 9-10.

14

Finally, Petitioner argued against application of the five-point enhancement under U.S.S.G. § 4B1.5 for engaging in a pattern of activity involving prohibited sexual conduct. Petitioner argued the enhancement violated Petitioner's Sixth Amendment rights because he had not been convicted based on the facts constituting the alleged past conduct. PSI Addendum ¶ 4; CR 113-061, doc. no. 107, pp. 10-11. The government argued a five-point enhancement under U.S.S.G. §4B1.5(b)(1) is appropriate where a defendant has been convicted of a sex crime such as attempted online enticement of a minor and has engaged in a pattern of activity involving prohibited sexual conduct, even where the defendant has not been convicted of crimes regarding the past pattern of activity. Id. at 11-12. Furthermore, the government argued the enhancement is appropriate because Petitioner demonstrated a pattern of activity involving prohibited sexual conduct by repeatedly using a false name, age, and "overall persona" when communicating with minor females to develop a sexual relationship. Id. at 12-13; id., doc. no. 80, p. 2. The Court found Petitioner's conviction for attempted online enticement of a minor satisfied the requirement of a conviction for a sex crime and his interactions with both the 13-year-old female and his ex-wife when she was 17 constituted a pattern of activity sufficient for the enhancement. Id. at 107, pp.15-16. The Court overruled Petitioner's objection and adopted the findings of the PSI. Id. at 17.

Judge Hall heard statements in mitigation from Mr. Saul and Petitioner's brother. Mr. Saul emphasized Petitioner's almost complete lack of a criminal record and his past medical issues, including depression and insomnia. Id. at 18-19. Mr. Saul highlighted Petitioner's consistent employment history and continuing education after high school. Id. at 19-20. Mr. Saul also asked the Court to consider the effect incarceration would have on Petitioner, since he had never been incarcerated. Id. at 20-21.

15

Petitioner's brother, Jawad Shah, described Petitioner's actions in the aftermath of 9/11, which included gathering family and friends to donate blood to local hospitals and joining the "U.S. military civil service," where he could offer the benefit of his bilingual skills.  Id. at 21-22.  Prior to doing so, Petitioner found out he had cancer but had the "resiliency to fight the disease."  Id. at 22.  After recovering from cancer, Petitioner "put his life in danger for a year-long service," by "help[ing] in reconciliation efforts" and "bringing education at the forefront of local villages."  Id.  Mr. Shah stated Petitioner also assisted women in starting their own businesses and transported life-saving equipment to local hospitals.  Id.  Mr. Shah then told a story of Petitioner teaching him about integrity and honesty after stealing candy from a local store as a child.  Id.

Chief Judge Hall sentenced Petitioner to 294 months in prison as to count one and 240 months in prison as to counts two and three to be served concurrently, resulting in a total term of 294 months in prison.  Id. at 29; Id., doc. no. 89.

### D.    Direct Appeal

On appeal, Petitioner, represented by Michael Andrew Clark, argued (1) the evidence was insufficient to show Petitioner took a substantial step toward violating § 2422(b); (2) the prosecutor committed misconduct warranting a new trial by misstating the law regarding § 2422(b); (3) the District Court abused its discretion by admitting evidence of his prior online communications with two minors; and (4) the District Court erroneously sentenced him by applying the five-point enhancement pursuant to U.S.S.G. § 4B1.5(b)(1).  United States v. Syed, 616 F. App'x 973, 975 (11th Cir. 2015) (per curiam), cert. denied, 136 S. Ct. 1506 (U.S. 2016).  The Eleventh Circuit rejected Petitioner's arguments and affirmed the conviction.  Id.

The Eleventh Circuit considered Petitioner's sufficiency of the evidence argument under the manifest miscarriage of justice standard instead of the rational trier of fact standard because Mr. Saul did not renew his motion for judgment of acquittal at the end of the evidence. Id. at 976-977. The court looked to Petitioner's online and offline conduct, including the number of messages sent, "grooming" tactics, arrangement to meet, and arrival at the apartment with alcohol, condoms, and pepper spray to determine Syed's argument did not satisfy the manifest miscarriage of justice standard. Id. at 978. The court declined to express a view as to whether Petitioner's argument would succeed under the rational trier of fact standard. Id.

Under review for plain error, the court held the prosecutor did not commit prosecutorial misconduct by stating Petitioner satisfied the substantial step requirement by making arrangements to meet and traveling to meet the fictional minor. The court stated neither the statutory language of § 2422(b) nor precedent resolved the issue in Petitioner's favor. Id. at 978-979. The court also noted its precedent acknowledged offline conduct can form part of the basis for a substantial step. Id. As to Petitioner's third argument, the court held the District Court did not abuse its discretion by admitting evidence of his prior online communications with his ex-wife when she was 17 years old and another 13-year-old female, as both interactions were "highly probative of [Petitioner's] intent." Id. at 979-981.

Finally, the court held the District Court's application of the five-point enhancement under 4B1.5(b) was appropriate. Id. at 981-982. The court stated, where a defendant's instant conviction qualifies as prohibited sexual conduct, only one additional qualifying instance is necessary to constitute a pattern of activity and the prior instance need not have resulted in a conviction. Id. The court determined Petitioner's prior interaction with the 13-

year-old female satisfied the requirement and, accordingly, did not consider whether

Petitioner's interaction with his ex-wife while she was 17 also satisfied the requirement.  Id.

**E.     § 2255 Motion**

On March 27, 2017, Petitioner, through counsel, filed a § 2255 motion.  Doc. no. 1, 1-

2, p. 12.)  On June 2, 2017, Respondent filed its response, and, on June 23, 2017, Petitioner,

through counsel, filed an amended § 2255 motion.  Petitioner asserts fourteen grounds for

relief in his amended § 2255 motion:

(1)     Trial counsel provided constitutionally ineffective assistance by failing to renew  his motion for judgment of acquittal, which resulted in the Eleventh Circuit reviewing Petitioner's sufficiency of the evidence claim under the manifest miscarriage of justice standard instead of the rational trier of fact standard;

(2)     Trial counsel provided constitutionally ineffective assistance by failing to adequately advise Petitioner regarding a plea offer and negotiate a better plea agreement;

(3)     Trial counsel provided constitutionally ineffective assistance by failing to adequately argue an entrapment defense at trial;

(4)     Trial counsel provided constitutionally ineffective assistance by failing to object to false and unfairly prejudicial statements made by the prosecutor in her opening statement and closing argument;

(5)     Trial counsel provided constitutionally ineffective assistance by failing to object to the admission of unauthenticated documents at trial;

(6)     Trial counsel provided constitutionally ineffective assistance by failing to adequately investigate and impeach Nicole Neuman and present testimony from Jawad Syed at trial;

(7)     Trial counsel provided constitutionally ineffective assistance by failing to call Camille Mitchell and attendees of Petitioner's son's birthday party at trial;

(8)     Trial counsel provided constitutionally ineffective assistance by failing to adequately advise Petitioner regarding the risks of testifying at trial;

(9)    Trial counsel provided constitutionally ineffective assistance by failing to object or make a record when the jury foreperson repeatedly fell asleep during trial;

(10)    Trial counsel provided constitutionally ineffective assistance by failing to object to jury instructions regarding the definition of a "substantial step";

(11)    Trial counsel provided constitutionally ineffective assistance by failing to adequately argue U.S.S.G. § 4B1.5(b) did not apply because the prior acts were not prohibited sexual conduct;

(12)    Trial counsel provided constitutionally ineffective assistance by failing to present evidence in mitigation regarding Petitioner's history of service to the country in the fight against terrorism;

(13)    Trial counsel's combined errors resulted in ineffective assistance of counsel; and

(14)    The Eleventh Circuit's application of the manifest miscarriage of justice standard when reviewing his insufficiency of the evidence claim violated Petitioner's right to due process.

(See generally doc. no. 7.)

## II.    DISCUSSION

### A.    No Evidentiary Hearing Required

Section 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941

F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). For example, because the deficient performance prong of ineffective assistance is judged by "whether counsels' representation fell below an objective standard of reasonableness, not whether counsel could provide some explanation for their actions," an evidentiary hearing exploring strategic decisions is not automatically required. Thomas v. United States, 596 F. App'x 808, 810 (11th Cir. 2015). When the Court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance without an evidentiary hearing." Gordon v. United States, 518 F.3d 1291, 1302 (11th Cir. 2008). Because Petitioner's claims lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

**B.     Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro, 538 U.S. at 505; United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

20

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." Gordon, 518 F.3d at 1301. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Court's analysis is further guided by the principle that appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit.  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000); see also United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (rejecting ineffective assistance argument because "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").  Nor does the Sixth Amendment require appellate advocates to raise every non-frivolous issue.  Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).

### 1. Mr. Saul Was Not Ineffective for Failing to Make a Renewed Motion for Acquittal

Petitioner argues Mr. Saul was ineffective by failing to renew the motion for judgment of acquittal, and, as a result, the Eleventh Circuit considered Petitioner's sufficiency of the evidence claim under the manifest miscarriage of justice standard instead of the rational trier of fact standard.  (Doc. no. 7, pp. 8-10.)  Petitioner argues there is a reasonable likelihood Petitioner would have received a more favorable outcome on appeal under the rational trier of fact standard because arrangements to meet and travel cannot constitute substantial steps nor could Petitioner's messages because they were not explicit. (Id. at 10-20.)

In determining Petitioner's conviction did not constitute a manifest miscarriage of justice, the court considered the totality of the evidence, including:  (1) the number of messages exchanged; (2) Petitioner's use of grooming tactics; (3) arranging to meet "Samantha" alone at her apartment; and (4) arriving at the apartment with alcohol, condoms, and pepper spray.  Id.

Additionally, the court stated, "[a] reasonable jury could have concluded that [Petitioner] took a substantial step, marking his actions as criminal and corroborating his intent to encourage Samantha to have sex with him."  Id. at 978.  While the court reviewed Petitioner's challenge under the appropriate standard, the court indicated it would have ruled the same way even under the reasonable trier of fact standard.  Thus, from the outset, Petitioner faces a formidable challenge in establishing a reasonable probability he would have received a more favorable outcome on appeal had Mr. Saul renewed his motion and the court reviewed the challenge under the lesser standard.

In support of his claim, Petitioner argues arranging a meeting and travel cannot constitute substantial steps. (Doc. no. 7, pp. 13-16.)  Petitioner's argument is out of line with established Eleventh Circuit precedent and the court's analysis on appeal in this very case. The court has held on numerous occasions travel constitutes a substantial step toward committing § 2422(b).  United States v. Jockisch, 857 F.3d 1122, 1134 (11th Cir. 2017) ("Defendant then took a substantial step to further this attempt by traveling to Sara's apartment, where he was arrested"); United States v. Wilkerson, 702 F. App'x 843, 849 (11th Cir. 2017) (collecting cases).  Furthermore, the court considered Petitioner's arrangements and travel to "Samantha's" apartment on appeal when determining whether there was sufficient evidence for finding a substantial step occurred.  Syed, 616 F. App'x at 978.

Petitioner argues the court held in Rothenberg, 610 F.3d 621, 627 (11th Cir. 2010), internet communications alone can constitute a substantial step toward violating § 2422(b). Petitioner misreads Rothenberg. There, the court had to decide "whether sexually solicitous communication by means of interstate commerce, *without more*, can ever constitute a substantial step toward commission of an offense in violation of 18 U.S.C. § 2422(b) . . . ." Id.  The court "recognized and left undecided" that issue in United States v. Murrell, 368 F.3d 1283 (11th Cir. 2004), because the defendant "engaged in objective acts," including traveling and arriving at the arranged location.  Id. at 1288, n.3.  Thus, while additional objective acts such as arranging a meeting and travelling to the location are not required for a substantial step toward committing § 2422(b), they clearly may constitute substantial steps.

Petitioner's argument the Eleventh Circuit has only described travel as sufficient for a substantial step in dicta is without merit.  While the court has often held travel is only one of the actions constituting a substantial step, alternative bases for a decision are not dicta.  See

24

United States v. Bravo, 532 F.3d 1154, 1162 (11th Cir. 2008) ("[I]n this circuit additional or alternative holdings are not dicta, but instead are as binding as solitary holdings.")

Finally, even if Petitioner's travel and arrangement to meet were not sufficient to satisfy the substantial step requirement, his online communications also satisfied the requirement.  The Eleventh Circuit has recognized grooming behavior may constitute a substantial step toward committing § 2422(b).  United States v. Lee, 603 F.3d 904, 915 (11th Cir. 2010) ("Much of [petitioner's] conduct . . . supports a finding he groomed the girls in an effort to facilitate a future sexual encounter.") (citation omitted).

Here, SA Ozden testified Petitioner's conduct met the six recognized grooming techniques.  CR 113-061, doc. no. 108, pp. 252-53.  SA Ozden testified Petitioner's messages "are textbook grooming technique which is designed to fulfill that sexual exploitation."  Id. at 290.  Thus, although Petitioner did not make direct sexual advances toward "Samantha" during the course of their conversation, his grooming behavior was directed toward enticing "Samantha" to engage in sexual acts with him.  Petitioner's grooming behavior strongly corroborates the required culpability, and, thus, his behavior was sufficient to constitute a substantial step toward committing § 2422(b).

In sum, based on Eleventh Circuit precedent, the overwhelming evidence in this case, and the Eleventh Circuit's ruling, there is no reasonable probability Petitioner would have received a better result on appeal if Mr. Saul had renewed his motion for acquittal and the court reviewed his claim under a rational trier of fact standard.  Thus, Petitioner cannot show prejudice and is not entitled to relief on his ground one claim.

**2.    Mr. Saul Was Not Ineffective for Failing to Adequately Advise Petitioner of The Plea Offer or Negotiate a Better Offer**

Petitioner argues Mr. Saul was ineffective by failing to adequately advise him of the plea offer from the United States or negotiate a better plea offer.  (Doc. no. 7, pp. 20-21.)  First, Petitioner's conclusory argument is rebutted by the record.  Petitioner and Mr. Saul signed the plea offer letter provided by the government indicating they "received th[e] offer and fully discussed it with each other" prior to rejecting the offer.  (Doc. no. 6-1, p. 2.)  Petitioner does not claim Mr. Saul misrepresented the offer or misadvised him to reject it.  Petitioner only states Mr. Saul did not "adequately advise" him of the risks of going to trial, without describing what advice he received or why it was insufficient.  Thus, Petitioner's conclusory argument is insufficient to contradict his prior signed statement to the contrary.  Tejada, 941 F.2d at 1559.

Additionally, even if Mr. Saul was ineffective in communicating the offer, Petitioner has not shown prejudice.  Petitioner argues he would only have "served approximately 10 years in prison, instead of the 24.5 years to which he was ultimately sentenced" if he accepted the offer.  (Doc. no. 7, p. 20.)  However, Petitioner has alleged no facts and made no argument the Court would have sentenced him to a shorter term of imprisonment under the terms of the plea offer than he ultimately received after trial.  Butcher, 368 F.3d at 1293.  Thus, Petitioner has not carried the burden of showing prejudice as to this ground.

Second, Petitioner claims Mr. Saul was ineffective for failing to negotiate a more favorable plea agreement.  As detailed above, the evidence against Petitioner was strong, and Petitioner offers no basis upon which Mr. Saul could have bargained for a better deal.  A bald assertion some sort of other, more favorable plea deal might have been possible fails to establish the requisite prejudice.  Cummings v. United States, No. CV 112-224, 2013 WL

2422889, at *8 (S.D. Ga. June 3, 2013) (collecting cases for proposition conclusory, after-the-fact assertion concerning possibility of more favorable plea deal insufficient to show prejudice).  As Petitioner cannot show prejudice, his claim fails.  Thus, Petitioner is not entitled to relief on his ground two claims.

### 3.    Mr. Saul Was Not Ineffective for Failing to Raise Entrapment Defense

Petitioner alleges Mr. Saul was ineffective by failing to adequately argue and demonstrate entrapment.  (Doc. no. 7, p. 21.)  "The defense of entrapment has two elements: (1) the government's inducement of the crime; and (2) the defendant's lack of predisposition to commit the crime before the inducement."  United States v. Pisa, 701 F. App'x 781, 784 (11th Cir. 2017) (citing United States v. Orisnord, 483 F.3d 1169, 1178 (11th Cir. 2007)).  Additionally, counsel is not ineffective for failing to present a doomed entrapment defense.  United States v. Killian, 639 F.2d 206, 210 (5th Cir. 1981).[1]

Petitioner cannot show prejudice as to his ground three claim because an entrapment defense would have been doomed.  Petitioner's past interactions with Ms. Neumann and the thirteen-year-old female are clear evidence of Petitioner's predisposition to commit the crime of attempted online enticement of a minor.  Thus, the evidence regarding those interactions completely undermines any argument Mr. Saul could have made regarding an entrapment defense.  In light of the evidence regarding these past acts, Mr. Saul made a reasonable strategic decision to not present an entrapment defense.  Strickland, 466 U.S. at 690.  Thus, Mr. Saul was not ineffective for failing to argue an entrapment defense at trial, and Petitioner is not entitled to relief on this ground.

---

[1]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

4.   **Mr. Saul Was Not Ineffective for Not Objecting to the Prosecutor's Statements Regarding Substantial Steps During Her Opening Statement and Closing Argument**

Petitioner argues Mr. Saul was ineffective for not objecting to the "false and unfairly prejudicial" statements made by the government during its opening statement and closing arguments and, as a result, the Eleventh Circuit reviewed his prosecutorial misconduct claim for plain error rather than *de novo* on appeal.  (Doc. no. 7, pp. 21-22.)

Petitioner cannot show prejudice because the prosecutor did not misstate the law.  In the prosecutor's opening statement, she stated:

> For Count One, the Government must prove that this Defendant used a facility of interstate commerce to attempt to entice, coerce or persuade someone he believed to be 14 years old to engage in illicit sexual conduct.  That – and we will show that he took a substantial step in doing that – in attempting to do that.  Even though there was no actual 14-year-old involved, he believed there was and he took a substantial step toward meeting her to engage in illicit sexual conduct.
>
> . . . .
>
> So the issue in dispute, really, with regard to Count One is going to be whether or not the Defendant knowingly attempted to persuade, induce, entice a person he believed to be 14 to engage in sexual conduct and whether he took [a] substantial step to accomplish that goal, and you'll see in your evidence – primarily from the text messaging that the Defendant participated in himself – to show that he believed that Samantha was a 14-year-old girl that he was telling her lies about himself in order to cause her or induce her to agree to meet with him and that he was looking for a sexual relationship – not merely a friendship.  He then showed up with condoms and liquor at the appointed time – certainly, a substantial step in accomplishing that goal.

CR 113-061, doc. no. 108, pp. 27-28.  The prosecutor stated in her closing argument:

> Now, the other thing with an attempt charge, which is what Count One is, is the Government must prove that the Defendant knowingly intended to commit the crime that I just talked about and that his intent was strongly corroborated by taking a substantial step towards committing that crime and it's the Government's position that that substantial step towards committing the crime was setting up a time to meet with Samantha and, also, appearing at the location where that meeting was scheduled to take place, but I think it's clear

28

from the evidence in this case that there are a couple of these elements that really are not in dispute.

. . . .

So that's what the evidence will show and proves beyond a reasonable doubt the substantial step that was taken was actually going to meet her – to set up the time and to actually meet with her was a substantial step to demonstrate that this wasn't just some idle conversation not really interested in getting together with the person.

Id., pp. 364, 378.

On appeal, Petitioner argued the prosecutor misstated the law by arguing arranging to meet and travel were substantial steps toward violating § 2422(b).  Syed, 616 F. App'x at 978-79.  The Eleventh Circuit held the prosecutor's comments did not constitute plain error because the text of the statute does not "expressly indicate that the online enticement of the minor need be sexually explicit or that the sexual propositioning must exclusively occur online," and binding precedent had not resolved the issue in Petitioner's favor.  Id. at 979.  On the contrary, the court stated, "if anything, our prior precedent has acknowledged that offline conduct can form part of the basis for a substantial step."  Id.  (citations omitted).  As stated above, several Eleventh Circuit cases describe travel as a substantial step toward violating § 2422(b).  , 857 F.3d at 1134; Wilkerson, 702 F. App'x at 849.  Thus, Eleventh Circuit precedent undermines Petitioner's argument.

Petitioner cites no cases in support of his argument travel to an arranged meeting cannot constitute a substantial step toward violating § 2422(b).  The prosecutor did not misstate the law during her opening statement and closing argument.  As prejudice cannot result when counsel fails to raise a meritless issue, Winfield, 960 F.2d at 974, Petitioner's argument fails, and he is not entitled to relief on this ground.

5.     **Mr. Saul Was Not Ineffective by Failing to Object to the Admission of Documents at Trial**

Petitioner argues Mr. Saul was ineffective by failing to object to the admission of unauthenticated documents at trial.  (Doc. no. 7, p. 22.)  Petitioner does not identify what exhibits are at issue or how they were not properly authenticated.  Id.

"A district court has discretion to determine authenticity, and that determination should not be disturbed on appeal absent a showing that there is no competent evidence in the record to support is."  United States v. Siddiqui, 235 F.3d 1318, 1322 (11th Cir. 2000).  The prosecutor provided a foundation for admissibility of every exhibit admitted into evidence.  CR 113-061, doc. no. 108, pp. 38, 43-47, 54-55, 57, 59-60, 65-66, 114-16, 119-21, 123-24, 130-31, 132-33, 134-35, 172-73, 193-94, 200, 215-16, 223-24, 225-28.  The Court admitted each of the exhibits without objection from Mr. Saul.  Id.  Additionally, Petitioner also identified several exhibits as authentic, including his email addresses and the history of communications between him and "Samantha" and between him and the thirteen-year-old female.  Id. at 326-28, 330-332, 337-338, 349-50.

Petitioner has made no argument and alleges no facts in support of his blanket assertion some unspecified exhibits were not properly authenticated.  Without more, he cannot carry his burden of showing there was no competent evidence in the record to support their authenticity.  Prejudice cannot result when counsel fails to raise a meritless issue. Winfield, 960 F.2d at 974.  Accordingly, Petitioner is not entitled to relief on his ground five claims.

6.     **Mr. Saul Was Not Ineffective by Failing to Impeach Ms. Neumann**

Petitioner argues Mr. Saul was ineffective by failing to adequately impeach Ms. Neumann.  (Doc. no. 7, pp. 22-23.)  Petitioner claims Mr. Saul should have:  (1) cross-

examined Ms. Neumann more thoroughly regarding her desire for Petitioner to go to prison and (2) called Petitioner's brother, Jawad, to testify about Ms. Neumann's statements to him to that effect.  (Id.)

The records shows Mr. Saul attempted to impeach Ms. Neumann, during both his cross-examination of her and Petitioner's testimony.  On cross examination, Ms. Neumann testified she divorced Petitioner after he was arrested and moved to Virginia.  CR 113-061, doc. no. 108, p. 206.  She testified she argued with Petitioner after he was charged and traveled from Virginia specifically to testify against Petitioner at trial.  Id. at 206-07.  Finally, Mr. Saul asked if Ms. Neumann "made statements to the effect that if he's found not guilty you'll find a way to put him in jail," to which Ms. Neumann responded, "I said that I would attempt to press charges myself."  Id. at 207.  Additionally, Petitioner testified he and Ms. Neumann had "quite a few" arguments after his arrest and she said she wanted him to be convicted.  Id. at 311.  Petitioner testified Ms. Neumann said she would try to get Petitioner convicted, even if he was not convicted of these charges.  Id.

The record shows Ms. Neumann openly admitted her bias against Petitioner and expressed her desire to have him convicted, and Petitioner's testimony provided further evidence of Ms. Neumann's bias.  Because Ms. Neumann's bias was clear and undisputed at trial, there is no indication further questioning of her on the issue, or testimony from Petitioner's brother, would have had any conceivable effect on the proceedings.  Butcher, 368 F.3d at 1293.  Accordingly, Petitioner cannot show he suffered prejudice and is not entitled to relief on this ground.

### 7.   Mr. Saul Was Not Ineffective for Failing to Call Additional Witnesses

Petitioner argues Mr. Saul was ineffective by failing to present testimony from additional witnesses, including:  (1) Camille Mitchell, to corroborate Petitioner's testimony he did not have sex with Ms. Neumann until she was eighteen years old; and (2) attendees of Syed's son's birthday party to contradict Ms. Neumann's testimony about Petitioner's behavior during the party.  (Doc. no. 7, p. 23.)  Petitioner is not entitled to relief on this ground because he cannot show prejudice due to failure to call these non-exculpatory witnesses in the face of overwhelming evidence of his guilt.

First, even if additional testimony convinced the jury Petitioner did not have sex with Ms. Neumann until she was eighteen, there is no reasonable probability Petitioner would have received a different outcome at trial because Petitioner was not charged for his prior conduct for his wife.  Furthermore, while the Court considered Petitioner's past conduct with Ms. Neumann in applying the five-point enhancement under U.S.S.G. § 4B1.5(b), the Court could have rested its finding merely on Petitioner's conduct with the thirteen-year-old female in 2012, as the Eleventh Circuit did in its decision on appeal.  Syed, 616 F. App'x at 982.  Accordingly, Petitioner cannot show there is a reasonable probability he would have been acquitted or received a lesser sentence if Mr. Saul elicited testimony to cause the jury and the Court to believe Petitioner did not have sex with Ms. Neumann until she was eighteen years old.

Second, Petitioner's claim the jury would have found him not guilty if Mr. Saul presented evidence he was attentive at his son's birthday is simply incredible.  Petitioner's behavior at the birthday party is not material to the elements of the crimes of which Petitioner was convicted, and, furthermore, Petitioner has not made any argument to show

what effect such testimony would have likely had on the jury.  In light of the overwhelming evidence of guilt, including Petitioner's admissions at trial, it is entirely implausible testimony regarding his behavior at the party would have had any effect on the outcome of the case at all.  Butcher, 368 F.3d at 1293.

Accordingly, because Petitioner cannot show prejudice as to these alleged errors, he is not entitled to relief on his ground seven claims.

### 8.      Ground Eight Fails Because Mr. Saul Was Not Ineffective In His Advice Concerning Petitioner Testifying at Trial

Petitioner argues Mr. Saul was ineffective by advising him to testify at trial without adequately advising him of the risks and, as a result, harmful evidence that would not have been introduced otherwise "might have affected the outcome."  (Doc. no. 7, p. 23-24.) Again, Petitioner's argument is impermissibly conclusory.  Petitioner fails to allege any specific facts regarding:  (1) what advice Mr. Saul gave to Petitioner regarding testifying; (2) how that advice was deficient; (3) what evidence would not have been presented at trial but for Petitioner testifying; or (4) how it affected the outcome of the trial Most tellingly, Petitioner also does even claim he would not have testified at trial but for Mr. Saul's advice. Id.  In the absence of any specific facts in support of his allegations, Petitioner cannot establish deficient performance or prejudice as to this ground.

Furthermore, because the weight of the evidence presented during the government's case in chief was overwhelming, Petitioner cannot show prejudice based on whatever evidence came out during his testimony that would not have come out otherwise.  In fact, most of Petitioner's testimony concerning the events that took place between February 8 and February 13, 2013, was consistent with the government's case in chief.  Petitioner's version of the facts predominantly diverged from the government's theory of the case as to:  (1) his

reason for lying about his age and name; (2) his intent regarding his online communications; and (3) his relationship with Ms. Neumann, both when they met and following his arrest. Because Petitioner has failed to make any detailed argument or allege any facts to affirmatively show prejudice as to Mr. Saul's allegedly inadequate advice regarding testifying at trial, Petitioner is not entitled to relief as to his ground eight claims.

> **9.    Petitioner Is Not Entitled To Relief on the Ground Nine Claim Mr. Saul Should Have Memorialized the Number of Times a Juror Fell Asleep**

Petitioner argues Mr. Saul was ineffective by failing to object when the jury foreperson "repeatedly fell asleep during trial," despite Petitioner asking him to object or "make a record." (Doc. no. 7, p. 24.) Ground Nine fails for at least two reasons.

First, even if the Court credits Petitioner's allegation the jury foreperson fell asleep during the trial, Petitioner has not shown Mr. Saul's conduct was outside the range of professionally competent assistance.   In determining whether counsel's assistance was deficient, the Court may look to what reasonably could have motivated counsel to act as they did.  Gordon, 518 F.3d at 1301.  Other courts have considered counsel's decision not to object to sleeping jurors as a strategic decision, which does not constitute ineffective assistance of counsel.  United States v. Morgan, Nos. 5:12cr5/MW/CJK, 5:15cv52/MW/CJK, 2017 WL 5799230, at *11 (N.D. Fla. Oct. 25, 2017), adopted by 2017 WL 5762133 (S.D. Fla. Nov. 28, 2018); Saintilus v. Jones, No. 15-21987-Civ-ALTONAGA, 2016 WL 1403147, at *16 (S.D. Fla. Mar. 4, 2016), adopted by 2016 WL 1392294 (S.D. Fla. Apr. 8, 2016); Walls v. McDonough, No. 3:04-CV-434-J-32MMH, 2016 WL 3313737, at *9 (M.D. Fla. Nov. 14, 2006)

Petitioner provides almost no factual context for Mr. Saul's decision not to object to the sleeping juror other than to say he asked Mr. Saul to object and Mr. Saul failed to do so. (Doc. no. 7, p. 24.)  If the juror were sleeping during the government's case in chief, Mr. Saul could have reasonably decided to allow the juror to sleep so he or she would miss portions of the government's evidence.  Allowing a juror to sleep so he or she would miss evidence potentially key to the government's case would have been a reasonable strategic decision on Mr. Saul's part.  Thus, the Court cannot say Mr. Saul performed deficiently by failing to object to the sleeping juror.

Second, even assuming Mr. Saul failed to object to a sleeping juror and that failure constituted deficient performance, Petitioner has not shown he suffered prejudice as a result. To establish prejudice, Petitioner must affirmatively prove there was a reasonable probability he would not have been convicted had Mr. Saul objected to the sleeping juror.  Strickland, 466 U.S. at 694.  However, Petitioner has pointed to nothing to support his claim other than his own conclusory allegation that the jury would not have found him guilty if Mr. Saul had objected.  (Doc. no. 7, p. 24.)  Furthermore, in light of the overwhelming evidence of guilt, the sleeping juror likely had no effect on the outcome of the trial whatsoever.  In short, Petitioner has not affirmatively proven he was prejudiced by Mr. Saul's conduct, and, accordingly, he is not entitled to relief on his ground nine claims.

### 10.   Mr. Saul Was Not Ineffective by Failing to Object to The Substantial Step Jury Instruction

Petitioner argues Mr. Saul was ineffective by failing to object to Judge Hall's jury instructions regarding the definition of a substantial step. Petitioner argues a substantial step "must be a step toward the particular charged crime, not just toward any crime or any bad act." (Doc. no. 7, p. 24.)  The Eleventh Circuit has held district courts have "broad discretion

in formulating a jury charge as long as the charge as a whole is a correct statement of the law." Lecroy v. United States, 739 F.3d 1297, 1322-23 (11th Cir. 2014) (quoting United States v. Turner, 871 F.2d 1574, 1578 (11th Cir. 1989).

Petitioner's argument regarding the jury instructions lacks a factual basis in the record. As to the attempted online enticement of a minor charge, the Court instructed:

> The Defendant can be found guilty of an attempt to commit the offense of coercion and enticement of a minor to engage in sexual activity only if both of the following facts are proved beyond a reasonable doubt: First, that the Defendant knowingly intended to commit the crime of coercion and enticement of a minor to engage in sexual activity; and, second, that the Defendant's intent was strongly corroborated by his taking a substantial step towards committing the crime. A substantial step is an important action leading up to committing of an offense, not just an inconsequential act. It must be more than simply preparing. It must be an act that would normally result in committing the offense.

CR 113-061, doc. no. 81, pp. 412.

It is clear from the jury instructions the substantial step must be a step toward the offense at issue, not merely any offense. Furthermore, Judge Hall's definition of a substantial step is identical to the relevant Eleventh Circuit criminal pattern jury instructions, which state, "[a] 'substantial step' is an important action leading up to committing of an offense – not just an inconsequential act. It must be more than simply preparing. It must be an act that would normally result in committing the offense." Eleventh Circuit Pattern Jury Instructions (Criminal Cases), 11 (2010), available at https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCriminalPatternJuryInstruction.pdf. Petitioner has provided no citation to authority to show this pattern jury instruction, which Judge Hall followed to the letter, is not a correct statement of the law.

For these reasons, Mr. Saul was not ineffective for failing to object to Judge Hall's jury instructions, and Petitioner is not entitled to relief on ground ten.

36

      **11.**    **Mr. Saul Did Not Provide Ineffective Assistance of Counsel by Failing to Argue Against Application of the Five-Point Enhancement Under U.S.S.G. § 4B1.5(b)**

Petitioner argues Mr. Saul was ineffective by failing to adequately argue the five-point enhancement pursuant to U.S.S.G. § 4B1.5(b) should not apply because the two prior acts were not prohibited sexual conduct.  (Doc. no. 7, pp. 24-25.)  There are two reasons why Petitioner is incorrect.

First, Mr. Saul objected to the five-point enhancement under § 4B1.5(b) in the PSI Addendum and at sentencing.  PSI Addendum ¶ 4; CV 113-061, doc. no. 107, pp. 10-17.  While Mr. Saul's argument focused primarily on an alleged Sixth Amendment violation, Mr. Saul also argued the acts did not constitute prohibited sexual conduct.  Id.  Specifically, Mr. Saul argued in his objection to the PSI Petitioner "has not engaged in . . . conduct that would constitute a pattern of prohibited sexual conduct."  PSI Addendum ¶ 4.  At sentencing, Mr. Saul argued the conversations with Ms. Neumann and the thirteen-year-old, which constituted the prior acts, were "about meeting, getting together," and there were "no discussions . . . that there would be any sexual conduct."  CV 113-061, doc. no. 107, p. 15.  The Court found the prior acts qualified as a pattern of activity involving prohibited sexual conduct under § 4B1.5(b) and overruled Petitioner's objection to application of the enhancement.  Id. at pp. 16-17.

Second, the Eleventh Circuit considered Petitioner's argument on appeal that the District Court erred by finding the communications were prior instances of prohibited sexual conduct under § 4B1.5(b).  Syed, 616 F. App'x at 981-82.  Petitioner conceded on appeal his communications with Ms. Neumann "might have constituted some crime," but argued the communications with the thirteen-year-old were insufficient and argued a single instance is

insufficient to be a pattern of conduct.  Id.  However, the court held one prior instance is sufficient to satisfy § 4B1.5(b) and Petitioner's communications with the thirteen-year-old "constituted an attempt that would violate § 2422(b), thus qualifying as an instance of prohibited sexual conduct under § 4B1.5(b)(1)."  Id.

Because prejudice cannot result when counsel fails to raise a meritless issue, Mr. Saul was not ineffective for failing to challenge the prior acts as prohibited sexual conduct, and Petitioner is not entitled to relief on ground eleven.

### 12. Mr. Saul Did Not Provide Ineffective Assistance of Counsel While Presenting Evidence and Argument in Mitigation at Sentencing

Petitioner argues Mr. Saul "failed to adequately argue and present evidence regarding mitigating factors in [Petitioner's] favor," including Petitioner's "history of service to the country in the fight against terrorism."  (Doc. no. 7, p. 25.)  Petitioner's argument is belied by the record.

First, Mr. Saul had Jawad Shah, Petitioner's brother, speak on Petitioner's behalf at the sentencing hearing.  CV 113-061, doc. no. 107, pp. 21-23.  Mr. Shah spoke at length about Petitioner's patriotism following 9/11, including donating at local blood drives and joining the Army in a civil service capacity.  Id. at 21-22.  Mr. Shah also described in detail Petitioner's duties while deployed as part of his civil service.  Id. at 22.

Furthermore, Mr. Saul made several arguments in mitigation on Petitioner's behalf. Mr. Saul informed the Court Petitioner had never been arrested before, other than a misdemeanor when he was a teenager, and argued a sentence at the lower end of the guideline range would be sufficient punishment.  Id. at 18.  Mr. Saul also argued a shorter sentence would be appropriate based on Petitioner receiving a five-point enhancement based

on his past behavior.  Id. at 19.  Mr. Saul described Petitioner's health issues, which included non-Hodgkin's lymphoma, depression, and insomnia.  Id.

Finally, Mr. Saul stated Petitioner has been employed consistently as an adult, received an associate's degree in general science, and continued to take college courses after receiving his degree.  Id. at 19-20.  Mr. Saul asked the Court to consider those factors in favor of both a downward variance and a sentence at the lower end of the guideline range. Id. at 20.  Thus, the record shows Mr. Saul made numerous arguments in mitigation and presented evidence, through Mr. Shah, of Petitioner's service to the country.  Petitioner does not indicate what arguments Mr. Saul could have made in Petitioner's favor but did not. Without more, the Court cannot say Mr. Saul rendered ineffective assistance of counsel. Accordingly, Petitioner is not entitled to relief on ground twelve.

### 13.   Because Petitioner Cannot Show Ineffective Assistance of Counsel, His Cumulative Error Argument Fails

Petitioner argues Mr. Saul rendered constitutionally ineffective assistance of counsel based on his cumulative errors at trial.  (Doc. no. 7, p. 25.)  "[W]here there is no error or only a single error, there can be no cumulative error."  United States v. House, 684 F.3d 1173, 1210-11 (11th Cir. 2013) (citing United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004)).  As explained in detail above, none of Petitioner's grounds alleging ineffective assistance of counsel have merit.  Thus, Petitioner's cumulative error argument fails and he is not entitled to relief on ground thirteen.

### C.   The Eleventh Circuit Properly Applied the Manifest Miscarriage of Justice Standard to Petitioner's Sufficiency of the Evidence Claim

Petitioner argues the Eleventh Circuit violated his right to due process by applying a manifest miscarriage of justice standard to his sufficiency of the evidence argument on

appeal instead of the rational trier of fact standard.  (Doc. no. 7, pp. 25-26.)  Longstanding Eleventh Circuit precedent applies the manifest miscarriage of justice standard to a sufficiency of the evidence challenge where counsel fails to renew a motion for judgment of acquittal at the end of all the evidence.  United States v. Baston, 818 F.3d 651, 663 (11th Cir. 2016); United States v. House, 684 F.3d 1173, 1196 (11th Cir. 2012); United States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994).  Petitioner cites no law in support of his argument application of the standard in this context violates his right to due process, and the Court has located any binding legal support for his contention.  Accordingly, Petitioner's argument is without merit, and he is not entitled to relief.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 6th day of July, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA